UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                      :
CANDIDO BAEZ,                                                         :
                                                                      :
                                        Plaintiff,                    :
                                                                      :
                   -v-                                                :          13-cv-9165 (KBF)
                                                                      :
LT. PINKER et al.,                                                    :          OPINION & ORDER
                                                                      :
                                        Defendants.                   :
                                                                      :
-------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 1, 2015

KATHERINE B. FORREST, District Judge:

Pro se plaintiff Candido Baez brings this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated from approximately December 2008 to December 2013 while he was incarcerated at various correctional facilities operated by the New York State Department of Corrections and Community Supervision.  Baez has named a considerable number of individual corrections officers as defendants.  Now pending before the Court is defendants' motion to dismiss.  (ECF No. 38.)  Because the majority of Baez's claims are barred both by the Eleventh Amendment and the applicable statute of limitations, and because all of his claims are without merit, defendants' motion is GRANTED.

I.      BACKGROUND

        A.      Factual Allegations

Pro se plaintiff Candido Baez is currently incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York.  (ECF No. 46 ("SAC") at 1.)  He has named the following individuals as defendants in this action: Lieutenant

("Lt.") Pinker; Sergeant ("Sgt.") McNamara; Correction Officer ("C.O.") Maldonado; Deputy Superintendent ("Dep. Supt.") Dawson Brown; Dep. Supt. William A. Lee; Dep. Supt. William Keyser; Captain ("Capt.") Ronald Brerenton; C.O. Bethea; Director Norman R. Bezio; Superintendent ("Supt.") Michael Capra; Supt. Ronald W. Moscicki; Deputy ("Dep.") Kevin O'Brien; Dep. Bryan Clark; Capt. Hirsch; Sgt. Hulton; Lt. Mark Drumsta; Joseph Chisolm; Nicholas DeAngelis; Dep. Supt. Justin Thomas; Dep. E. O'Meara; James Festa; a John Doe defendant; the Superintendent of the Auburn Correctional Facility; and the "Assistant Attorney General." (See SAC at 1.)

The operative complaint contains a number of allegations concerning a December 9, 2008 misbehavior report and a corresponding disciplinary hearing that commenced on December 13, 2008, as well as various incidents that occurred between January 2009 and August 2010. (See SAC ¶¶ 1-147, 157-58, 165-71.) As will be explained below, Baez's claims that are based on these allegations are untimely, and accordingly the Court will not describe these allegations in detail here.

Baez also alleges that: (1) in or around August and September 2011 he was subjected to various forms of harassment by defendants and forced to undergo urinalysis testing and cell searches (SAC ¶¶ 160-64); (2) on November 30, 2011 he was forced to wear prison clothing, handcuffs, a waist chain, and leg shackles to his father's funeral, which humiliated him and caused him great emotional distress (SAC ¶¶ 148-51); (3) his wife and children were harassed by defendant Bethea

during prison visits between April 10, 2012 and December 14, 2013, and defendant

Capra ignored Baez's complaints about this alleged harassment (SAC ¶¶ 152-54);

and (4) from November 27, 2013 to December 9, 2013, he was barred from accessing

his facility's law library and his legal materials (SAC ¶¶ 174-78).

B.      Procedural Background

Baez's initial complaint was filed on ECF on December 27, 2013, but it is

signed and dated December 19, 2013.  (ECF No. 2 at 67.)  The case was initially

assigned to Judge Kenneth M. Karas.  Plaintiff filed an amended complaint (the

"First Amended Complaint") on July 30, 2014.  (ECF No. 14.)  Defendants filed the

instant motion to dismiss on October 14, 2014.  (ECF No. 38.)  Baez filed his

opposition on November 21, 2014.  (ECF No. 43.)

On December 5, 2014, Baez filed another amended complaint (the "Second

Amended Complaint"), which differs from the First Amended Complaint only in

that it identifies Nicholas DeAngelis, who was previously named as John Doe #6, as

a defendant.  (Compare ECF No. 14, with SAC; see also ECF No. 47.)  The Court

accepted the Second Amended Complaint for filing on December 18, 2014.  (ECF No.

47.)  Defendants submitted a letter requesting that the Court deem the pending

motion to dismiss as a motion to dismiss the Second Amended Complaint, which the

Court so ordered on January 5, 2015.  (ECF No. 49.)  Defendants filed a reply brief

that same day.  (ECF No. 50.)

On March 6, 2015, this action was transferred to the undersigned as part of a

routine intra-District redistribution of cases.

II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Id.  The Court will give "no effect to legal conclusions couched as factual allegations."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"— dismissal is appropriate.  Twombly, 550 U.S. at 570.

4

Complaints drafted by pro se plaintiffs are construed "liberally" and
interpreted "to raise the strongest arguments that they suggest." Pabon v. Wright,
459 F.3d 241, 248 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).
Nevertheless, to survive a motion to dismiss, a pro se plaintiff must still plead
enough facts to state a claim to relief that is plausible on its face. See Hill v.
Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  In deciding a motion to dismiss a pro se
complaint, a court may consider materials outside the pleadings to the extent they
are consistent with the allegations in the complaint, including the pro se litigant's
opposition papers.  Ceara v. Deacon, No. 13–CV–6023 (KMK), 2014 WL 6674559, at
*2 (S.D.N.Y. Nov. 25, 2014) (collecting cases).

III.   DISCUSSION

A.   Statute of Limitations

Most of Baez's claims concern incidents and conduct that occurred over three
years before he filed his complaint—that is, before December 19, 2010—and they
are accordingly barred by the applicable statute of limitations and must be
dismissed.

The statute of limitations for § 1983 actions in New York courts is three
years.  Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009).  A cause of
action accrues "when the plaintiff knows or has reason to know of the injury which
is the basis of his action." Pearls v. City of Long Beach, 296 F.3d 76, 80 (2d Cir.
2002) (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)).
Causes of action under § 1983 accrue "when the plaintiff has a complete and present
cause of action . . . that is, when the plaintiff can file suit and obtain relief."

Wallace v. Kato, 549 U.S. 384, 388 (2007) (internal quotation marks and citations omitted).

For statute of limitations purposes, a pro se prisoner's § 1983 complaint is deemed filed when delivered to prison officials. Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999).  Baez's complaint and request to proceed in forma pauperis state that they were signed the "19th day of December of 2013."  (ECF Nos. 1 at 2, 2 at 67.)  The Court thus deems this action filed as of December 19, 2013.[1]  Accordingly, all of Baez's allegations concerning incidents that occurred between January 2009 and August 2010 are untimely and therefore insufficient to state a claim for relief.

Baez's claims based on the December 9, 2008 Tier III misbehavior report and the December 13, 2008 disciplinary hearing must also be dismissed as untimely. Baez argues that his claims regarding the disciplinary hearing accrued on

---

[1] Baez argues that his complaint should be deemed to have been filed earlier than December 19, 2013, because he would have filed his complaint earlier but for intervening events and misconduct by defendants.  In essence, Baez argues that the statute of limitations on certain of his claims be equitably tolled through December 19, 2013.  A court may apply equitable tolling where "exceptional circumstances" prevented a party from timely performing a required act, and where the party "acted with reasonable diligence throughout the period he [sought] to toll."  Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (alteration in original) (quoting Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)).  No such extraordinary circumstances justify doing so here.  First, Baez argues that he was delayed because he was busy working on the Article 78 proceeding regarding the disciplinary proceeding—but there is no reason that he could not have both litigated his Article 78 proceeding and filed a complaint in this action.  Second, Baez argues that his untimely filing should be excused because on June 28, 2010 one of the defendants threw away legal material relating to this matter (see SAC ¶ 168)—but plaintiff received this material on March 12, 2010, which gave him over three months to review it, and in any event Baez had more than ample time to recover.  Third, Baez argues that he lost time due to delays in his access to the law library—but the lost time associated with this claim amounts to only approximately two weeks of delay.  (See SAC ¶¶ 174-78.)  And finally, Baez argues that on December 9, 2013, defendant Pinker caused the computer file containing the typewritten version of his complaint to be deleted.  Although certainly an unfortunate circumstance for Baez, the alleged deletion of his complaint does not justify deeming his complaint to be filed earlier than it was—given Baez's previous experiences, he certainly should have known that he was running a risk by waiting until the last minute, and Baez does not provide any detail as to how far along his complaint was at the time that it was deleted, or how much re-work was required. In sum, Baez's arguments for deeming the complaint to be filed earlier than December 19, 2013 or for equitably tolling the statute of limitations applicable to his claims lack merit.

December 20, 2010, the date on which defendant Bezio administratively reversed

the hearing officer's determination of guilt.  Baez is incorrect.  Although some

§ 1983 causes of action do not accrue until there has been a final adjudication of the

alleged unconstitutional act, this is not the case for Baez's § 1983 procedural due

processing claim regarding the disciplinary hearing, because the hearing did not

affect the overall length of Baez's confinement.[2]  See Jenkins v. Haubert, 179 F.3d

19, 27 (2d Cir. 1999); Odom v. Calero, No. 06 Civ. 15527(LAK)(GWG), 2008 WL

449677, at *7 (S.D.N.Y. Feb. 19, 2008) ("[W]here a plaintiff's punishment following

the challenged disciplinary hearing did not result in a loss of good time credits or

otherwise impact the fact or duration of his overall confinement, case law holding

that a claim does not accrue until the disciplinary ruling is reversed does not affect

the accrual of plaintiff's claim." (internal quotation marks omitted)).

Baez's claim accrued when he knew or had reason to know of his due process

injury, and when he was able to file suit and obtain relief.  The disciplinary hearing

at issue commenced on December 13, 2008 and concluded on December 16, 2008.

(See SAC ¶¶ 98-99.)  Baez alleges that due process violations pervaded the entire

hearing—and crucially, on December 15, 2008 he told Supt. Luis Marshall (who is

not named as a defendant in this action) that he was of the belief that his due

process rights were being violated by, inter alia, his inability to introduce evidence

and call witnesses in support of his defense, defendants' tampering with evidence,

and his inability to cross-examine witnesses.  (SAC ¶ 13.)  Thus, by his own

---

[2] Baez is serving a sentence with a maximum term of life imprisonment and is ineligible for good-time credits.  (Declaration of Counsel, ECF No. 51 ex. A.)

admission, Baez was aware of the alleged due process violations as late as

December 15, 2008.  Baez then exhausted his administrative remedies on February

2, 2009, when Bezio confirmed the hearing officer's determination.  See Matter of

Baez v. Bezio, 77 A.D.3d 745 (N.Y. App. Div. 2010).  Because on this date Baez was

aware of the alleged due process violations, and because at that time he was able to

file suit based on those violations, his procedural due process claim accrued no later

than that date.  His due process claims therefore became untimely on February 2,

2012—but he did not file this lawsuit until December 19, 2013.

Accordingly, Baez's claims concerning incidents that occurred between

January 2009 and August 2010, the December 9, 2008 Tier III misbehavior report,

and the December 13, 2008 disciplinary hearing are barred by the three-year

statute of limitations.

B.    Eleventh Amendment Bar on Official Capacity Claims

Baez's claims for monetary damages against defendants in their official

capacities are barred by the Eleventh Amendment, which "immunizes state officials

sued for damages in their official capacity."  Spencer v. Doe, 139 F.3d 107, 111 (2d

Cir. 1998) (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985)).  Baez's claims for

monetary damages against defendants in their official capacities are accordingly

dismissed.

C.    Standing to Assert Claims on Behalf of Wife and Children

Baez lacks standing to assert claims based on the alleged harassment of his

wife and children.  A plaintiff lacks standing to bring a § 1983 claim on their own

behalf based upon a deprivation of their loved ones' rights or for emotional stress

caused by such a deprivation.  See, e.g., Collins v. W. Hartford Police Dep't, 324

Fed. App'x 137, 138 (2d Cir. 2009) (summary order) (plaintiff lacked standing to

challenge constitutional deprivations alleged to have been experienced by his

mother); Morgan v. City of New York, 166 F. Supp. 2d 817, 819-20 (S.D.N.Y. 2001)

(mother lacked standing to bring individual § 1983 claims based upon a deprivation

of her daughter's constitutional rights).  Indeed, "[i]t is well-settled that standing

for the purpose of a § 1983 claim is not conferred solely on the basis of harm to

plaintiff's family member." Marino v. Chester Union Free Sch. Dist., 859 F. Supp.

2d 566, 568 (S.D.N.Y. Mar. 14, 2012).  Further, a plaintiff spouse generally lacks

standing to sue for injuries to their non-party spouse. See Manbeck v. Micka, 640

F. Supp. 2d 351, 367 n.16 (S.D.N.Y. 2009) (collecting cases).  Accordingly, Baez lacks

standing to bring claims based upon the alleged harassment of his wife and children

during prison visits, and the emotional distress that such harassment caused him,

and these claims are therefore dismissed.

D.     Funeral Trip Clothing Claim

Baez's allegations regarding his trip to his father's funeral are insufficient to

state a claim under either the Eighth Amendment or the Fourteenth Amendment.

1.     Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual

punishments." U.S. Const. amend. VIII.  "After incarceration, only the unnecessary

and wanton infliction of pain constitutes cruel and unusual punishment forbidden

by the Eighth Amendment." Trammell v. Keane, 338 F.3d 155, 162 (2d Cir. 2003)

(quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)).  "To be cruel and unusual

punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Baez's allegations regarding his inability to attend his father's funeral in the clothing of his choice do not state an Eighth Amendment claim—despite Baez's alleged shame and humiliation, the circumstances here are not sufficiently severe for this Court to conclude that these allegations state a claim for cruel and unusual punishment.  The Court's determination in this regard is consistent with the results reached by New York district courts in similar cases.  See, e.g., Roman v. Donelli, 616 F. Supp. 2d 299, 307 (N.D.N.Y. 2007) (dismissing prisoner's claim that he suffered Eighth Amendment violation because he was denied the opportunity to see his wife on her deathbed and to attend her funeral); Sanders v. Coughlin, No. 87 Civ. 4535 (MGC), 1987 WL 26872, at *1-2 (S.D.N.Y. Nov. 23, 1987) (prisoner's allegations that defendants took him to his father's funeral service one hour late and that he was escorted by uniformed correction officers were not sufficient to state an Eighth Amendment claim).[3]

### 2.    Fourteenth Amendment

To state a claim of denial of due process under the Fourteenth Amendment, "[t]he threshold issue is always whether the plaintiff has a property or liberty

---

[3] In McPherson v. Coombe, the Second Circuit suggested that "if, in order to cause a particular inmate psychological distress, prison officials deny the inmate leave which is otherwise available to attend a parent's funeral, such conduct may in some circumstances constitute cruel and unusual punishment and therefore provide a claim for relief under section 1983."  174 F.3d 276, 280 (2d Cir. 1999).  The Court notes that the situation here is quite different from that addressed by the Second Circuit in McPherson, as Baez was not denied the ability to attend the funeral entirely—rather, he was permitted to attend, albeit under conditions that he found far less than ideal.

interest protected by the Constitution." Perry v. McDonald, 280 F.3d 159, 173 (2d

Cir. 2001) (quoting Narumanchi v. Board of Trs. of the Conn. State Univ., 850 F.2d

70, 72 (2d Cir. 1988)).  Baez is of course correct that New York's prisoner

regulations state that "[w]hen granted permission to visit a sick relative or to

attend a funeral of a member of his immediate family, the inmate shall appear in

civilian clothes," N.Y. Comp. Codes R. & Regs. tit. 7, § 52.20, and that "[i]nmates

shall be permitted to wear their own personal clothing during funeral or deathbed

visits," id. tit. 9, § 7051.8(d).  However, because the correctional facility

administration has discretion to deny a prisoner a funeral visit, "a prisoner does not

have a protected right to attend the funeral of a relative" under the Fourteenth

Amendment.  Verrone v. Jacobson, No. 95 CIV. 10495(LAP), 1999 WL 163197, at

*4-5 (S.D.N.Y. 1999); see also Mercer v. Green Haven Corr. Facility, No. 94 CIV.

6238(DLC), 1998 WL 85734, at *3 (S.D.N.Y. Feb. 27, 1998) ("[A]n inmate does not

have a constitutional right to attend a family member's funeral.").  Thus, with

regard to attendance at the funeral of a relative, New York's prisoner regulations

"place no substantive limitations on official discretion and thus create no liberty

interest entitled to protection under the Due Process Clause."  Olim v. Wakinekona,

461 U.S. 238, 250–251 (1983).  Because Baez had no liberty interest in attending his

father's funeral, it follows that he had no liberty interest in being dressed or

visually presented in a particular way at that funeral.  His allegations regarding

the funeral are therefore insufficient to state a claim under the Fourteenth

Amendment.

E.    Other Bases for Dismissal

Baez's other claims must also be dismissed.  First, Baez's claim that he was

arbitrarily, capriciously, and selectively assigned to a double bunk cell must be

dismissed both because Baez has not made any allegations of personal involvement

on the part of defendants, who are all individual corrections officers,[4] see Colon v.

Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), and because "it is clearly established that

double-celling, even in maximum security prisons, does not in itself constitute cruel

and unusual punishment," Jones v. Goord, 435 F. Supp. 2d 221, 227 (S.D.N.Y. 2006)

(citing Rhodes v. Chapman, 452 U.S. 337, 339, 349-50 (1981)).

Second, Baez's claims based on threats, harassment, urinalysis, and cell

searches must be dismissed because general allegations of threats and harassment

without actual injury do not give rise to a constitutional violation, see, e.g., Cole v.

Fischer, 379 Fed. App'x 40, 43 (2d Cir. 2010), and Baez's allegations regarding urine

testing and cell searches do not rise to the level of an Eighth Amendment violation,

see, e.g., Kingsley v. Bureau of Prisons, 937 F.2d 26, 32 (2d Cir. 1991) (required

urine testing accompanied by "minor and fleeting pain" is insufficient to establish

an Eighth Amendment violation because no actual harm was inflicted); Brown v.

Dreyfus, No. 9:11–CV–1298, 2013 WL 4026845, at *3 n.12 (N.D.N.Y Aug. 6, 2013)

(explaining how under Second Circuit law required urine testing does not violate

the Eighth Amendment), Little v. Mun. Corp., 51 F. Supp. 3d 473, 498 (S.D.N.Y.

2014) (cell searches constitute an Eighth Amendment violation if they have no

---

[4] Baez contends in his opposition papers that he was moved into the double bunk cell by Keyser
(ECF No. 43 at 13-15), and therefore this particular ground for dismissal does not apply to Keyser.

12

legitimate penological interest and are intended solely to harass).  In any event, as explained above, Baez's claims based on urinalysis testing prior to December 19, 2008 are barred as untimely.

Third, Baez's claims regarding the loss or destruction of his property must be dismissed because a claim for an intentional deprivation of property is not cognizable in federal court if state courts provide a post-deprivation remedy, Hudson v. Palmer, 468 U.S. 517, 533 (1984), and here "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action," Davis v. New York, 311 Fed. App'x 397, 400 (2d Cir. 2009) (quoting Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001)).

Fourth, Baez's claim regarding denial of access to the law library must be dismissed because Baez does not allege that his two to three day inability to access the law library or his seven day inability to access his floppy disc was resulted in actual injury to him by frustrating his efforts to pursue a non-frivolous legal claim. See Lewis v. Casey, 518 U.S. 343, 352-53 (1996).  Further, Baez's claim regarding the floppy disc must be dismissed because it does not implicate a named defendant—it implicates only non-party "Sgt. Thus."

Lastly, Baez's claims for injunctive relief and declaratory judgment must also be dismissed.  With regard to injunctive relief, Baez has failed to allege that he will suffer any irreparable harm absent the issuance of an injunction.  See ACLU v. Clapper, No. 14-42-CV, 2015 WL 2097814, at *32 (2d Cir. May 7, 2015) (party seeking injunction must demonstrate they will suffer irreparable harm if injunctive

relief is not granted).  With regard to declaratory judgment, the Eleventh

Amendment "does not permit judgments against state officers declaring that they

violated federal law in the past." P.R. Aqueduct v. Metcalf & Eddy, Inc., 506 U.S.

139, 146 (1993).

IV.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from

this Opinion and Order would not be taken in good faith and therefore denies in

forma pauperis status for the purpose of an appeal.  See Coppedge v. United States,

369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close the motion at ECF No. 38 and to

terminate this action.

SO ORDERED.

Dated:      New York, New York
            June 1, 2015

_____
KATHERINE B. FORREST
United States District Judge

Copy to:
Candido Baez
(90-A-3203)
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562